THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JACKIE LEE BUFFINGTON, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MANUEL JOHNSON, Appellant.

Fourth Department, February 15, 1968.

*Wilfred E. Hoffmann* for Jackie Lee Buffington, appellant.

*Thomas J. Lowery, Jr.,* for Manuel Johnson, appellant.

*Frank A. Gualtieri, Jr., District Attorney (Lucien Ali* of counsel), for respondent.

*Per Curiam.* Appellants have been convicted of murder, first degree, based upon an indictment alleging that they assaulted and killed a female companion. There is no dispute that for several hours early in a January morning the female was riding about Onondaga County with defendants and one William Buffington, a brother of defendant Buffington. It is further conceded that during this period she was brutally assaulted, killed, and her body left in a lonely wooded area. The trial, however, produced a close factual issue as to whether she was murdered by defendants, as William Buffington, the principal witness for the People, testified, or by William Buffington, as both defendants testified upon the trial.

We conclude that serious erroneous rulings on the admission of evidence by the trial court deprived appellants of a fair trial and mandate a reversal of the judgments.

The County Medical Examiner was called by the People and gave routine testimony about his examination of the body of the deceased, the autopsy and findings. Thereafter, the prosecutor posed to the witness a hypothetical question that covers some seven pages in the record. The question, as framed, assumed the correctness of the version of the crime sponsored by the People and as related by William Buffington. The witness was asked

to assume, among other facts, that defendant Buffington struck the victim twice in the face, and defendant Johnson struck her once; that both dragged her out of the car; that the three disappeared; that William Buffington remained near the car but could hear her screams; that upon the return of appellants, defendant Buffington said he had hit her with a rock and she was dead. The question, as eventually posed, was the ability of the expert to express an opinion as to whether or not the actions of defendants were the producing cause of death. Over strenuous objections the doctor was permitted to opine that their acts were the cause of death. Upon cross-examination the witness frankly conceded that if names other than those of defendants had been incorporated in the question he would have concluded that such persons had caused the death of the victim.

All of this not only invaded the province of the jury but was seriously prejudicial. The issue of the identity of the killer or killers, as stated, was extremely close. Faced therewith the jury may well have cast the opinion of this doctor and public official on the scales against appellants upon the mistaken notion that he knew something about the case that they did not.

The trial court further erred in receiving in evidence the pretrial statements of the witness, William Buffington, wherein he recited the facts substantially as given by him on the trial. This error was compounded when upon the request of the jury during their deliberations the statements were given to them for perusal in the jury room.

These statements were properly made available to defense counsel upon cross-examination of the witness. In the midst thereof the prosecutor offered them in evidence and over objections they were received with the statement by the court that "when the time arrives" the jury might see them. During their deliberations the jury requested the statements and over objections the request was granted. The jury was told that only inconsistencies found therein could be considered and not the facts. There had been no contention by defendants that the testimony of the witness was a recent fabrication. The prosecutor offered the statements for the reason that "it is very difficult to isolate any part of them."

The rule is, of course, that a party may always show that one of his adversary's witnesses has, on another occasion, made statements which are inconsistent with some material part of his present testimony for the purpose of impeaching his credibility and his testimony. If the prior statement is in writing and the witness denies the statement, or answers that he does not remember, the writing may be proved and introduced in

evidence by the impeaching party as part of his case. (Richardson, Evidence [9th ed.], §§ 513–514; *Larkin* v. *Nassau Elec. R. R. Co.,* 205 N. Y. 267.)

The result here was that the jurors had before them during a portion of their deliberations the complete version in writing of the People's principal witness, but they were forced to rely on their memories for the opposing versions of the two defendants. The admonition that the jurors should search the exhibits only for inconsistencies was one easy to give, but it is impossible to determine whether or not it was obeyed.

The judgments should be reversed and a new trial granted.

WILLIAMS, P. J., BASTOW, GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Judgments unanimously reversed on the law and facts and a new trial granted.